

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| JACK KEITH FINDLEY,<br>**Employee,** | ) Docket No.: 2016-01-0035 |
| v. | ) State File Number: 67325-2014 |
| VOLKSWAGEN GROUP OF<br>AMERICA, INC.,<br>**Employer,** | ) |
| v. | ) Judge Thomas Wyatt |
| GALLAGHER BASSETT SERVICES,<br>INC.,<br>**Insurance Carrier.** | ) |

---

## COMPENSATION HEARING ORDER FOR TEMPORARY PARTIAL DISABILITY BENEFITS, ADDITIONAL PERMANENT PARTIAL DISABILITY BENEFITS, AND MEDICAL BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge for a Compensation Hearing on July 14, 2017. Mr. Findley sought temporary disability and additional permanent partial disability benefits. The determination of his claim requires the Court to: (1) select between competing opinions regarding the degree of Mr. Findley's permanent impairment and the date he attained maximum medical improvement; and (2) determine whether the condition that precluded Mr. Findley from returning to work at Volkswagen (VW) was a compensable injury. For the reasons set forth below, the Court awards Mr. Findley temporary partial disability benefits, additional permanent partial disability benefits, and future medical benefits.

### History of Claim

Mr. Findley is a forty-year-old resident of Marion County, Tennessee. He worked for VW in both assembly line and quality assurance jobs before the date of injury. Mr. Findley passed an extensive physical before VW hired him, and he experienced no back or radicular pain before the injury.

1

Mr. Findley injured his back when he twisted while lifting a door on an assembly line. He reported the injury and selected Dr. Jayant Eldurkar from a panel. On August 27, Mr. Findley saw a provider in Dr. Eldurkar's office. Mr. Findley remained under Dr. Eldurkar's care for two months during which he received a lumbar MRI, conservative treatment, and work restrictions. VW accommodated the restrictions, but Mr. Findley's symptoms worsened.

On October 22, Dr. Eldurkar referred Mr. Findley to an orthopedist, Dr. Jay Jolley.[1] Dr. Jolley diagnosed a lumbar strain, degenerative disc disease, a small L5-S1 herniated nucleus pulposus, and right-lower extremity radiculitis. Dr. Jolley replied to a causation inquiry from VW by stating that Mr. Findley's lumbar strain, superimposed on degenerative disc disease, was the cause of his back pain, while his leg pain resulted from his herniated L5-S1 disc. Dr. Jolley gave two lumbar epidural steroid injections that provided Mr. Findley partial, but temporary, relief. He also placed restrictions, which VW accommodated. Nevertheless, Mr. Findley's back and leg pain continued to worsen.

On March 23, 2015, Dr. Jolley responded to a second causation inquiry from VW by stating Mr. Findley's lumbar strain and L5-S1 herniated disc arose primarily out of and in the course and scope of employment but his degenerative disc disease did not. He also concluded Mr. Jolley's strain and herniated disc "[were] now resolved."[2] Dr. Jolley maintained the same restrictions,[3] but stated they were solely due to the non-work-related degenerative disc disease. On April 23, Dr. Jolley rated Mr. Findley's impairment at six percent to the whole body.

Dr. Jolley's opinions caused a fundamental change in VW's administration of Mr. Findley's claim. By policy, VW accommodates restrictions due to work injuries, but does not accommodate non-work-related restrictions. Thus, VW ceased providing the light-duty job when it learned of Dr. Jolley's new causation opinions.

Christine McEvoy, a VW management employee who helps employees with

---

[1] Mr. Findley contended that VW's case manager, not Dr. Eldurkar, selected Dr. Jolley. Dr. Eldurkar's October 22, 2014 note stated he would "refer Mr. Findley to an orthopedic spine specialist today," but did not specify a physician by name. However, a January 29, 2016 letter from Dr. Eldurkar stated: "Mr. Findley was referred to Dr. Jolley on October 22, 2014." (Ex. 11 at 11-12.)

[2] Dr. Jolley's March 2, 2015 note indicated Mr. Findley reported his lower extremity radiculitis was "50% better with the 2ⁿᵈ LESI [injection]." (Ex. 12, ex. 2 at 14.) However, he also reported he had a loss of bowel function two days earlier and reported pain rated at six on a scale of ten during the same visit. *Id.* Dr. Jolley's NP noted on April 23, 2015, that Mr. Findley reported back *and right lower extremity pain* rated at eight on a scale of ten and that "his symptoms have gotten worse since his last visit." (Ex. 12, ex. 2 at 12.) (Emphasis added.)

[3] Dr. Jolley's restrictions were: "no lifting greater than 10 pounds, no bending or twisting, no pushing or pulling greater than 20 pounds." (Ex. 12, ex. 2 at 5.)

2

workers' compensation claims, told Mr. Findley to apply for short-term disability (STD) benefits when Dr. Jolley changed his restrictions from work-related to non-work-related. Mr. Findley followed her instructions and received STD benefits between March 24 and August 20, 2015. Mr. Findley requested a second opinion of Dr. Jolley's opinion, but never received approval to see another physician.

Because of his disagreement with Dr. Jolley's opinions and treatment, Mr. Findley sought care on his own from orthopedist Dr. Scott Hodges. Dr. Hodges noted Mr. Findley reported having no back pain until he injured his back at VW. He diagnosed an L5-S1 disc protrusion and wrote: "based on the history given and review of MRI this is a work-related disc injury [at] L5-S1. This is not generalized degenerative disc disease from aging." Mr. Findley then continued treatment with Dr. Hodges and did not return to Dr. Jolley.

After VW stopped paying STD benefits on August 20, it paid Mr. Findley permanent partial disability benefits based on Dr. Jolley's impairment rating. Mr. Findley received twenty-seven weeks of PPD benefits, totaling $14,788.17 for April 24 through October 30.[4]

Shortly after Mr. Findley received the first PPD payment, he received a letter from VW stating it deemed him to have voluntarily resigned because he did not report to work after August 21, the date his STD leave expired. Mr. Findley countered by letter that he did not resign his job, but instead he explained he did not return to work because Ms. McEvoy told him that VW could not accommodate Dr. Jolley's restrictions. Mr. Findley's letter also stated he spoke to a VW employee on October 6 about applying for work within his restrictions.

On October 29, Mr. Findley completed and submitted VW's "Reasonable Accommodation Request Form" requesting a job accommodating his restrictions.[5] (Ex. 16.) This request culminated in a telephone conversation between Mr. Findley and VW management including Marcia Ann Wood. Ms. Wood testified VW informed Mr. Findley during the conversation that it would deem him to have voluntarily resigned if he could not tell them that day he was physically able to return to work. She testified Mr. Findley told them he could not return without accommodation, thus VW deemed that he voluntarily resigned because it could not accommodate his non-work-related restrictions.[6]

---

[4] The parties stipulated Mr. Findley's average weekly wage was $821.53, thus his compensation rate is $547.71 per week.

[5] Mr. Findley sought accommodations based on Dr. Hodges' restrictions, which were: "no lifting greater than thirty pounds occasionally or twenty pounds frequently and the ability to change sitting or standing positions every thirty minutes." (Ex. 17 at 1.)

[6] The Separation Notice listed "Voluntary Resignation" as the reason for the termination. (Ex. 14.)

3

Mr. Findley asserted that he did not resign his job, and in fact he told VW during the conversation that he knew of several jobs he performed in the past—one in the painting facility and another in quality assurance—that he could perform without accommodation. He stated that VW only offered him the assembly line job, which he could not perform without an accommodation.

Mr. Findley remained unemployed until June 6, 2017, though he applied for more than 100 jobs. During his unemployment, Mr. Findley obtained additional training and currently works in a manufacturing facility as an electrician.

Drs. Jolley and Hodges testified differently on several key issues. For instance, Dr. Jolley assigned a six-percent whole-body impairment, while Dr. Hodges assigned a rating of nine percent to the whole body. Dr. Jolley set Mr. Findley's date of maximum medical improvement on April 13, 2015, but Dr. Hodges set it on October 15, 2015. Finally, Dr. Jolley related the symptoms and attendant restrictions after March 2015 to non-work-related degenerative disc disease, while Dr. Hodges related Mr. Findley's restrictions to the work injury.

For his part, Mr. Findley testified that he had no physical restrictions before his low-back injury at VW. He stated he could mow his yard, use a weed-eater, lift his children, and ride a four-wheeler without pain. Since his injury, however, he has either stopped or significantly limited these activities due to back and right-leg pain. Mr. Findley testified he had to buy a new car after the injury because his other car sat lower and caused him pain when he entered and exited it. Mr. Findley's wife testified consistently with her husband as to the injury's impact on his physical capacities. She added that her husband's back pain significantly curtailed their intimate relations and that, when they travel by car, she does most of the driving because driving hurts his back more than riding.

### Findings of Fact and Conclusions of Law

*Applicable Legal Principles*

At a compensation hearing, Mr. Findley must prove all essential elements of his claim by a preponderance of the evidence. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2015).

*Permanent Partial Disability Benefits*

*Original Award of Permanent Partial Disability Benefits*

The Workers' Compensation Law requires an analysis of the amount of permanent partial disability benefits (PPD) due an employee at two separate times.

4

Specifically, Tennessee Code Annotated section 50-6-207(3)(A) (2016) provides that the first period of PPD, called the "original award," is paid after the employee reaches maximum medical improvement and is determined by multiplying the employee's impairment rating by four hundred fifty (450) weeks. The employer pays the original award whether the employee "has returned to work or not." *Id.*

Here, Volkswagen paid Mr. Findley $14,788.17 in PPD based on Dr. Jolley's six-percent impairment rating and claims it owes no further original benefits because the law presumes Dr. Jolley's six-percent rating correct. *See* Tenn. Code Ann. § 50-6-204(k)(7) (2016). Conversely, Mr. Findley seeks additional original benefits based on Dr. Hodges' nine-percent rating. To receive additional original award benefits, he must rebut the presumption attached to Dr. Jolley's rating by a preponderance of the evidence. The Court holds he did.

The Court first addresses the differing opinions regarding impairment. When faced with competing expert opinions, a "trial judge has the discretion to determine which testimony to accept." *Payne v. UPS,* TN Work. Comp. App. Bd. LEXIS 1112, at *18 (Dec. 30, 2014). In doing so, the trial court can consider, among other things, the qualifications of the experts, the circumstances of their examination, and the information available to them. *Bass v. The Home Depot,* 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Drs. Jolley and Hodges are both qualified, experienced orthopedic surgeons. Both utilized the Sixth Edition of the *AMA Guides to the Evaluation of Permanent Impairment* in determining their respective impairment ratings. Both placed Mr. Findley's injury in Class 1 of the *Guides'* "Lumbar Spine Regional Grid" because they diagnosed Mr. Findley with a herniated disc with non-verifiable radicular symptoms. The difference in the doctors' respective ratings results from their disparate application of the functional history, physical examination, and clinical studies within the adjustment grids in the *AMA Guides.*

Dr. Jolley explained his six-percent rating by stating that Mr. Findley had "nonverifiable radiculopathy . . . so in the Sixth Edition *Guidelines*, he fell into a Class 1 impairment."[7] When asked for more specificity, he stated he did not have his copy of the *Guides* with him, but added, "I mean, yeah . . . the formula you can use does include the amount of pain they're in, the amount of radiographic severity, which his is extremely mild, as I stated." (Ex. 12 at 29.) Dr. Jolley further explained that, in his opinion, Mr. Findley's main problem was back pain that did not come from his herniated disc.[8]

---

[7] The *Guides* allow a physician to assign a rating of between five to nine percent for a Class 1 lumbar impairment. The rating the physician selects depends on his or her application of the adjustment grid. *See AMA Guides,* at p. 574, Table 17-4.

[8] During this discussion, Dr. Jolley also accused Mr. Findley's counsel of "trying to . . . squeeze the turnip as hard as

Dr. Hodges provided the following explanation for his nine-percent rating:

> We put his impairment at 1, Grade 1. His functional status I put at 3. Now, I know you can make the argument that you can't be separated by two, or that brings [it] into question. But, you know, his functional status was based just upon basically his overall description of how functionally limited he is.
>
> You know, his physical exam, he didn't have any neurological deficit, and we assigned that a Grade 0. The MRI, if it's positive for anything like the protrusion at 5-1, that's a Grade 2. So if you just plug those numbers into the formula, that's how we got to where we're at with the 9 percent impairment rating to the body as a whole.

(Ex. 13 at 19.)

After considering all of the evidence, the Court holds Mr. Findley rebutted Dr. Jolley's impairment rating by a preponderance of the evidence. In making this holding, the Court accepts as credible Mr. Findley's testimony as to the injury's impact on his capacity to work. He testified assertively and without hesitation that he did not endure back or radicular pain before he injured his back at VW. Furthermore, he testified the pain from his work injury has severely limited his ability to lift, push and pull even moderately heavy items, as well as his ability to stand, walk or sit for extended periods. Mr. Findley's attempts to return to work at VW and his efforts to obtain additional education to secure less strenuous employment support the Court's belief in the truthfulness in Mr. Findley's testimony.

The Court accredits Dr. Hodges' emphasis on Mr. Findley's functional limitations over Dr. Jolley's failure to do so. The evidence clearly established that Mr. Findley's spinal condition resulted in permanent functional restrictions that adversely reduced his functional capacity; both Drs. Jolley and Hodges permanently restricted Mr. Findley's activities due to his spinal condition. However, Dr. Jolley failed to consider Mr. Findley's functional limitations in his impairment analysis because he considered the limitations as arising from non-work-related degenerative disc disease. The Court finds that the preponderance of the evidence supports Mr. Findley's testimony he experienced no back or radicular symptoms before his injury. Furthermore, Mr. Findley established his ability to perform heavy physical labor without restriction by successfully working at VW for two years before the injury. For these reasons, the Court discounts Dr. Jolley's impairment assessment because he did not consider Mr. Findley's functional limitations.

---

you can" to get Mr. Findley "every little percentage you can get." (Ex. 12 at 29.)

Dr. Jolley's opinion that Mr. Findley's herniated disc resolved in March 2015, gives the Court additional pause to question his impairment assessment. While Dr. Jolley's March 2015 note indicated Mr. Findley reported his radicular pain was fifty-percent reduced, but not eliminated, after an injection, Dr. Jolley's nurse practitioner noted a month later that Mr. Findley reported his radicular pain worsened to an eight on a scale of ten. During his deposition, Dr. Jolley never explained why he thought the disc injury resolved in March 2015, even though Mr. Findley continued to experience worsening radicular pain a month later. This lack of explanation further erodes the Court's confidence in Dr. Jolley's opinion.

The Court also accredits Dr. Hodges' opinion that a herniated disc, as opposed to degenerative disc disease, caused Mr. Findley's long-term, spine-related symptoms. Dr. Hodges thoroughly explained the basis for that opinion as follows:

> Well, I felt like his L5-S1 [herniation] was not necessarily causing nerve compression but, you know, you have neuropeptides or chemicals within your discs that are very inflammatory. They're a normal part of your disc, but if they leak out of your disc, so to speak, they're very inflammatory . . . So I think his disc protrusion at L5-S1 with chemical radiculitis basically was his underlying diagnosis.

(Ex. 13 at 11.)

In view of the above, the Court holds that the preponderance of the evidence rebuts Dr. Jolley's impairment opinion. Consequently, the Court awards Mr. Findley PPD benefits based on Dr. Hodges' impairment rating of nine percent to the whole body, meaning VW owes Mr. Findley an additional three percent PPD, or thirteen and one-half weeks of benefits, totaling $7,394.09.

*Date of Maximum Medical Improvement*

The Court next addresses the date of maximum medical improvement because that determination dictates the coverage period for any additional periods of requested benefits. *See* Tenn. Code Ann. §§ 50-6-207(2)(C), 50-6-207(3)(A) (2016).

The Court's previous finding that the preponderance of the evidence contradicted Dr. Jolley's opinion that Mr. Findley's work-related conditions resolved in March 2015 dilutes the Court's confidence in Dr. Jolley's April 2015 MMI date. Thus, the Court adopts Dr. Hodges' opinion that Mr. Findley attained MMI on October 15, 2015.

7

*Resulting Award of PPD Benefits*

Tennessee Code Annotated section 50-6-207(3)(B) (2016) provides an employee may receive enhanced PPD benefits if he has not returned to work at 100 percent of the wages he earned on the date of injury at the end of the initial benefit period. However, the employee does not receive enhanced PPD benefits if "[t]he employee's loss of employment is due to the employee's voluntary resignation or retirement; provided . . . that the resignation or retirement does not result from the work-related disability." Tenn. Code Ann. § 50-6-207(3)(D)(i) (2016).

The Court finds no merit in VW's contention that Mr. Findley is not entitled to increased PPD benefits because he voluntarily resigned. The preponderance of the evidence establishes that Mr. Findley took all available avenues to attempt to locate work at VW under his work-related restrictions. VW, as opposed to Mr. Findley, made the decision not to accommodate Mr. Findley's restrictions. Moreover, even if Mr. Findley had voluntarily resigned, VW would owe him increased PPD benefits because a voluntary resignation caused by an employee's work-related disability does not prevent an employee from receiving increased benefits. *See* Tenn. Code Ann. § 50-6-207(3)(D)(i) (2016). Here, Ms. McEvoy and Ms. Wood corroborated Mr. Findley's testimony that VW did not have work for him within his restrictions. Accordingly, the Court holds Mr. Findley established by a preponderance of the evidence that he is entitled to increased PPD benefits.

When applying the enhancement factors of section 50-6-207(3)(B), the Court finds only one applies to Mr. Findley's claim—the fact he did not return to work at VW entitles him to an enhancement of 1.35 times his impairment rating. Therefore, the Court calculates Mr. Findley's resulting award of PPD benefits by multiplying his original award of $22,182.26 by 1.35, which yields an additional $7,763.79 in PPD benefits after deducting the original award. *See* Tenn. Code Ann. § 50-6-207(3)(A) (2016).

*Temporary Partial Disability Benefits*

Temporary partial disability (TPD) benefits are payable when an employee is able to resume some gainful employment, but has not reached maximum recovery. *Hackney v. Integrity Staffing Solutions, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (July 22, 2016). The law calculates TPD benefits at "sixty-six and two-thirds percent (66 2/3%) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition." Tenn. Code Ann. § 50-6-207(2)(B) (2016).

Mr. Findley contended the Court's adjustment of the date of MMI to October 15, 2015, would entitle him to an award of TPD benefits between the last day VW allowed him to work under restrictions, March 23, 2015, and October 15. The evidence

8

demonstrated Mr. Findley remained under restrictions between March 24 and October 15 and that VW did not offer him work accommodating his restrictions during that time. Thus, the Court holds Mr. Findley established by a preponderance of the evidence that he was entitled to TPD benefits between March 24 and October 15, totaling $16,040.07.[9]

*Offset of short-term disability benefits*

Tennessee Code Annotated section 50-6-114(b) (2016) allows an employer to offset payments of STD benefits paid to an employee during the same period it paid temporary disability benefits if: 1) the employer self-funds the STD plan, and 2) the plan provides for an offset.

Here, Ms. McEvoy testified VW self-insured its STD plan. Further, the plan provides VW may offset other benefits, including workers' compensation, against the receipt of STD benefits. Accordingly, the Court holds VW may offset the $10,304.20 in STD benefits it paid against the TPD benefits awarded in this order. Therefore, the Court holds that, after application of the offset, VW owes Mr. Findley $5,735.87 in TPD benefits.

*Medical Benefits*

Finally, Mr. Findley asked the Court to designate Dr. Hodges as the authorized treating physician. He argued Dr. Jolley's causation opinion from March 2015 left him without the ability to obtain authorized treatment of his injury, thus necessitating Dr. Hodges' treatment. The Court denies this request.

"Tennessee courts have long held that the employer in a workers' compensation case generally has the right to control medical treatment, assuming that the employer has complied with the requirements of Tennessee Code Annotated section 50-6-204." *Scott*, at *7-8. Further, "[j]udges are not well-suited to second-guess a medical expert's treatment, recommendations, and/or diagnoses absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record." *Id.*

Here, VW complied with section 50-6-204 in offering Mr. Findley a panel from which he selected Dr. Eldurkar as ATP. VW's acceptance of Dr. Eldurkar's direct referral to Dr. Jolley without providing Mr. Findley a panel also complied with the law. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii) (2016). Though the Court disagrees with Dr. Jolley's causation and impairment opinions, it cannot require VW to authorize a new ATP under these circumstances. If Dr. Jolley declines to treat Mr. Findley further, he can

---

[9] VW paid Mr. Findley STD benefits totaling $10,304.20 from March 24 until August 20, and afterward began paying the original award of PPD benefits, which payments extended past October 15. Because Mr. Findley did not "earn" the payments he received from VW by working, the Court holds the applicable weekly compensation rate for his TPD benefits is the same as for TTD benefits, $547.71.

refer Mr. Findley back to Dr. Eldurkar for ongoing authorized treatment. *See* Tenn. Code Ann. § 50-6-204(a)(3)(E) (2016).

**IT IS, THEREFORE, ORDERED** as follows:

1. VW shall pay Mr. Findley $7,394.09 as an additional original award of PPD;

2. VW shall pay Mr. Findley $7,833.79 as a resulting award of PPD;

3. VW shall pay Mr. Findley $16,040.07 in TPD but may reduce such payment to $5,735.87 for an offset of $10,304.20 it paid Mr. Findley in STD;

4. Mr. Findley is awarded future medical benefits under the care of Dr. Jolley;

5. Costs of $150.00 are assessed against VW under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2016), to be paid within five days of this order becoming final;

6. Absent an appeal of this order by either party, the order shall become final thirty days after issuance;

7. Mr. Findley's Counsel may petition the Court for approval of her attorney's fee for successfully representing him in this claim; and,

8. VW shall prepare and file a statistical data form within ten business days of the date of this order, pursuant to Tennessee Code Annotated section 50-6-244 (2016).

**ENTERED this the 7th day of August, 2017.**

_____
**Thomas Wyatt, Judge**
**Court of Workers' Compensation Claims**

# APPENDIX

Technical record:

1. Petition for Benefit Determination filed December 7, 2016;
2. Petition for Benefit Determination, filed February 9, 2015;
3. Initial (Scheduling) Hearing Order;
4. Joint Notice of Filing Stipulated Medical Records & Statement Concerning Up-to –Date Medical Records;
5. Amended Petition for Benefit Determination;
6. Post-ADR Dispute Certification Notice;
7. Employer List of Witnesses and Exhibits;
8. Claimant's Witness List;
9. Claimant's Exhibit List;
10. Claimant's Amended Exhibit List;
11. Employer Pre-Compensation Hearing Statement;
12. Revised Scheduling Hearing Order;
13. Statement of Employer Regarding Use of Previously Filed Stipulated Medical Records at Trial;
14. Employer List of Witnesses and Exhibits;
15. Claimant's Amended Witness List;
16. Claimant's Second Amended Witness List;
17. Claimant's Pre-Compensation Hearing Statement;
18. Employee's Motion to Exclude Evidence; and
19. Order Denying Motions to Compel and to Exclude Evidence.

Exhibits:

1. Mr. Findley's employment history;
2. Description of job duties prepared by Mr. Findley;
3. First Report of Injury;
4. Choice of Physician form;
5. Essential Job Functions & Physical Demands description prepared by VW;
6. VW personnel records;
7. VW's performance evaluation of Mr. Findley;
8. VW's itemization of workers' compensation benefits paid in Mr. Findley's claim;
9. VW's itemization of short-term disability benefits paid to Mr. Findley;
10. Short-term disability plan;
11. Records of Workforce Corporate Health/Dr. Jayant Eldurkar;
12. Transcript of Dr. Jolley's deposition with attachments;
13. Transcript of Dr. Hodges' deposition with attachments;
14. Separation Notice;
15. Case manager closure letter;

11

16. Reasonable Accommodation Request Form completed by Mr. Findley;
17. Work restrictions forms completed by Dr. Hodges;
18. Records documenting jobs applied for by Mr. Findley;
19. Medical literature on the relation between smoking and intervertebral disc degeneration (for identification only—the Court sustained Mr. Findley's hearsay objection); and
20. Progressive HealthLIVE functional and job-specific testing.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of August, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Kathryn Leiderman, Esq., Employee's Attorney | | | X | kleiderman@birch.net; kleiderman@epbfi.com |
| Justin Furrow,, Esq. and Charles Gilbreath, Esq., Employer's Attorneys | | | X | jfurrow@chamblisslaw.com; cgilbreath@chamblisslaw.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

12